IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

JANE DOE[1], )
)
)
Plaintiff, )
)
) Case No. 1:25-CV-12928
v. )
)
)
CHIMEZIE ONONENYI )
Defendant. )
)

## VERIFIED COMPLAINT AND JURY DEMAND

Plaintiff, Jane Doe ("Plaintiff"), as and for her Complaint against Defendant Chimezie Ononenyi, Plaintiff hereby complains and alleges as follows:

### INTRODUCTION

For at least 226 days, anyone in the world with internet access was able to view explicit images and video of Jane Doe without her knowledge or consent. Chimezie Ononenyi, a man whom Jane Doe trusted and believed herself to be in a monogamous relationship with, maintained an online profile on AdultFriendFinder.com, an online dating service explicitly for adults seeking casual sexual encounters, "hookups" and exploration of various sexual kinks and fetishes. Ononenyi's profile contained images he took of Jane Doe and posted in secret, purposefully not informing her of their existence and for his own personal gain. One of the images Ononenyi uploaded was a video filmed quite literally behind Jane Doe's back, ensuring that she would not notice he was recording. Ononenyi's intentional secrecy in both filming and posting explicit images of Jane

---

[1] Plaintiff files as "Jane Doe" pursuant to 15 U.S.C. § 6851 (b) (3) (B) **Preservation of anonymity.** "In ordering relief under subparagraph (A), the court may grant injunctive relief maintaining the confidentiality of a plaintiff using a pseudonym." Id.

Doe's body demonstrates his moral depravity and shocking capacity to deliberately inflict harm upon an individual who trusted him. Jane Doe reported Ononenyi and his posts to the Lawrence Police Department the same day she discovered their existence. She has met with the Lawrence Police, the Massachusetts State Police, and the Fort Bend County Texas Sheriff's Office to report Ononenyi's offenses. Since May, Jane Doe has bravely sought justice despite Ononenyi's initial lies.[2]

## PARTIES

1. Plaintiff Jane Doe is an individual residing in Essex County, Massachusetts.
2. Defendant Chimezie Ononenyi is an individual residing in Fort Bend County, Texas.

## JURISDICTION AND VENUE

3. The court has jurisdiction over this action pursuant to 15 U.S.C. § 6851.
4. This court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1343, which gives the district court jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.
5. This court also has supplemental jurisdiction over the Plaintiffs' state law claims, pursuant to 28 U.S.C. §1367.
6. Pursuant to 28 U.S.C. §1391(b), venue is proper because a substantial part of the events giving rise to this action occurred in this district.

## FACTS COMMON TO ALL COUNTS

7. Plaintiff and Defendant began a dating relationship on or about May 2024.

---

[2] Ononenyi initial denied this behavior. However, in a judicial proceeding on July 8, 2025, wherein Doe sought extension of a Massachusetts Restraining Order pursuant to M.G.L c. 209A, against Ononenyi, he admitted the images were not consensually recorded or posted. See infra and Exhibit A.

8. From September 19, 2024, to September 24, 2024, Plaintiff and Defendant traveled to and stayed at the La Gran Via Hotel in Cartagena, Colombia. The trip was to celebrate Plaintiff's birthday.

9. During the trip, Defendant pressured Plaintiff into allowing him to take photographs of her naked body. Plaintiff assented after Defendant assured her it was just for him and that the images would stay between them.

    a. The two photographs Defendant took were of Plaintiff nude, with her uncovered genitals, pubic area, and breasts depicted.

10. Plaintiff is identifiable in these photographs by her birthmark on her upper right thigh, her bracelet from the hotel, and the manicure she got for her birthday.

11. In addition to these two photographs, Defendant took an explicit video of himself penetrating Plaintiff's genitals from behind.

    a. Plaintiff is identifiable in the video by the bathing suit she is wearing and her manicure.

12. Plaintiff was unaware that Defendant took this video and did not consent to being video recorded.

13. On or about September 20, 2024, Defendant posted the explicit video and two explicit images of Plaintiff to at least one online website, AdultFriendFinder.com.

14. Defendant did not have consent from Plaintiff to post these images, nor did he inform her that he did so.

15. On September 24, 2024, Plaintiff and Defendant returned from their trip and went back to their respective residences in Massachusetts.

16. Plaintiff and Defendant continued their dating relationship in Massachusetts until mid-November 2024.

17. On November 15, 2024, Defendant entered a pre-trial diversion program with the State of Texas for a charge of driving while intoxicated. *State of Texas v. Chimezie Uchenna Ononenyi,* Docket 24-CCR-237507.

18. On or about November 23, 2024, Defendant moved to Texas. He told Plaintiff this was a condition of his probation.

19. Plaintiff and Defendant stayed in touch when Defendant moved to Texas.

20. In January 2025, Plaintiff visited Defendant in Texas for the first time.

21. During this visit, Defendant told Plaintiff that he wanted her to move to Texas permanently so that they could have kids and start a business together.

22. At that time, Plaintiff was unaware that Defendant had posted explicit nonconsensual images of her online.

23. In February of 2025, Plaintiff visited Defendant in Texas for a second time. During this visit, Defendant again told Plaintiff that he wanted to start a business together.

24. At that time, Plaintiff was unaware that Defendant had posted explicit nonconsensual images of her online.

25. In April of 2025, Jane visited Chimezie in Texas for a third and final time.

26. During this visit, Defendant again told Plaintiff that he wanted to start a business together and suggested that they start an OnlyFans account together to get some seed money.

27. Plaintiff felt very uncomfortable with this suggestion and did not agree to it. At that time, Plaintiff was still unaware that Defendant had posted explicit nonconsensual images of her online.

28. Plaintiff ended their relationship on April 25, 2025, after she learned that Defendant was married to another woman ("legal wife") and expecting a child with a third woman ("child's mother").

29. At that time, Plaintiff was still unaware that Defendant had posted explicit nonconsensual images of her online.

30. After speaking with Defendant's legal wife and learning more about Defendant, Plaintiff began searching online to see if there was more that she could learn about the man she thought she knew.

31. On May 4, 2025, Plaintiff googled a screen name she had seen Defendant previously use, "BumpyJohnny." Plaintiff's Google search led her to a profile on AdultFriendFinder.com.

32. Plaintiff recognized the featured picture of user "BumpyJohnny" as the instant Defendant.

33. On the "BumpyJohnny" AdultFriendFinder.com profile, Plaintiff found the two explicit photographs of herself as well as the explicit video of her that she did not know Defendant had taken.

34. Plaintiff recognized herself immediately because of her body, birthmark, bathing suit, hotel bracelet, and manicure.

35. In addition to images of herself, she found explicit images of Defendant and explicit images of Defendant's child's mother.

36. Plaintiff contacted Defendant's legal wife to tell her she had just discovered nonconsensual images of herself online.

5

37. On May 4, 2025, the same day she discovered the images, Plaintiff went to the Lawrence Police Department to file a report.

38. Upon information and belief, by the time Plaintiff reached the police that day, Defendant had tried to cover his tracks and had taken down the image.

39. Upon information and belief, Defendant's legal wife told Defendant that Plaintiff knew about the images and was going to the police.

40. Lawrence Police told the Plaintiff, at that time, without evidence of the images they could not take a report.

41. Soon after, on or about May 22, 2025, Plaintiff returned to Lawrence Police to again try to file a report. This time, Lawrence Police would not take a report because they believed the offense occurred outside of their jurisdiction.

42. On May 25, 2025, frustrated by the lack of relief offered to her by the police, Plaintiff posted a warning about Defendant's behavior on a Facebook page in the hopes that the same thing would not happen to other women.

43. On May 26, 2025, Plaintiff received a voicemail from Defendant in which he identified himself and then threatened to call her workplace, threatened to sue her, and threatened to take out restraining orders against her.

44. On May 26, 2025, Plaintiff took down the Facebook post because she was scared.

45. On May 27, 2025, Plaintiff went back to the Lawrence Police Department at this time the Police recommended she seek a restraining order.

46. On May 27, 2025, Plaintiff's ex parte Restraining Order against Defendant was granted in Lawrence District Court pursuant to M.G.L c. 209A.

47. Due to service issues, the two-party restraining order hearing was not held until July 8, 2025.

48. Plaintiff sent a restraining order subpoena to AdultFriendFinder.com on June 17, 2025, seeking all images uploaded by "BumpyJohnny" as well as the name, mailing address, IP address[3], and email address associated with the account.

49. On or about July 1, 2025, Plaintiff reported the incident to the Massachusetts State Police ("MSP").

50. On July 7, 2025, Plaintiff received the subpoena response from AdultFriendFinder.com. The results of the subpoena confirmed that BumpyJohnny was owned and operated by Defendant.

51. Plaintiff provided the IP address as well as the other subpoenaed information to the Massachusetts State Police ("MSP").

52. MSP ran the IP address and found that they were most recently accessed in Fort Bend County, Texas.

53. MSP said they could not help Plaintiff due to jurisdiction and put Plaintiff in touch with Fort Bend County police.

54. On July 7, 2025, Plaintiff spoke with Fort Bend County Police, who told her they could not help her because she was not a resident of Texas.

55. On July 8, 2025, Plaintiff and Defendant attended the two-party restraining order hearing in Lawrence District Court, Massachusetts, in front of the Honorable Stephen B. Geary.

---

[3] An IP Address is an Internet Protocol address; a numerical label such as 192.0.2.,**1** that is assigned to a device connected to a computer network and provides the location of the host in the network. In general, an IP address is a unique number linked to online activity. See https://en.wikipedia.org/wiki/IP_address (last accessed August 28, 2025).

7

56. Plaintiff presented the Court with the results of the subpoena to AdultFriendFinder.com identifying the Defendant as "BumpyJohnny" and, including the explicit video taken and posted without her consent.

57. During the hearing, Defendant admitted to posting the video without Plaintiff's consent. Exhibit A – Transcript p. 13.

58. On July 8, 2025, the Lawrence District Court extended Plaintiff's restraining order against Defendant for one year, finding a "substantial likelihood of immediate danger and abuse." Exhibit A – Transcript p. 17.

59. On July 13, 2025, the Lawrence Police Department wrote an incident report regarding this matter.

## CAUSES OF ACTION

### Count I
### Disclosure of Intimate Images
### (15 U.S.C. § 6851)

60. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

61. A claim under the Violence Against Women Reauthorization Act ("VAWRA") requires: (1) an intimate visual depiction, (2) disclosure in interstate or foreign commerce, (3) nonconsensual disclosure, and (4) disclosure by the defendant. 15 U.S.C. § 6851(b)(1)(A).

62. An intimate visual depiction under the VAWRA means "a visual depiction, as defined in section 2256(5) of title 183 that depicts . . . the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual; or the display or transfer of

bodily sexual fluids . . . from the body of an identifiable individual; or an identifiable individual engaging in sexually explicit conduct." 15 U.S.C. § 6851(5)(A).

63. Here, intimate visual depictions of Plaintiff were posted on AdultFriendFinder.com.

64. The photos and video identify Plaintiff by showing her likeness, including a birthmark on her thigh, her clothing, and her distinctive birthday manicure.

65. The photos show Plaintiff's breast, nipples, and pubic area. The video shows Plaintiff engaged in sexually explicit conduct in the form of penetrative sexual intercourse.

66. Under the VAWRA, disclose means "to transfer, publish, distribute, or make accessible." 15 U.S.C. § 6851(4).

67. The intimate visual depictions of Plaintiff were disclosed in interstate or foreign commerce when they were posted on AdultFriendFinder.com.

68. Under the VAWRA, consent means "an affirmative, conscious, and voluntary authorization made by the individual free from force, fraud, misrepresentation, or coercion." 15 U.S.C. §6851(a)(2).

69. Pursuant to 15 U.S.C. § 6851, Plaintiff did not consent to the distribution of the intimate visual depictions. 15 U.S.C. § 6851(b)(2)(A)-(B).

70. The disclosure of the intimate visual depictions of Plaintiff was nonconsensual as they were published on the internet without her affirmation or authorization.

71. Further, the video was not consensually created intimate visual depictions as it was filmed behind Plaintiff's back without her knowledge.

72. Defendant knew that Plaintiff did not consent to any disclosure of the intimate visual depictions, as evidenced by his testimony in the restraining order hearing:

>     THE COURT: Did you ask her before you posted [the explicit video]?

9

      MR. ONONENYI: I didn't ask her, no.

Exhibit A – Transcript p. 13.

73. Under the VAWRA, an individual may recover the actual damages sustained by the individual or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred; and the court may, in addition to any other relief available at law, order equitable relief, including a temporary restraining order, a preliminary injunction, or a permanent injunction ordering the defendant to cease display or disclosure of the visual depiction.

74. As a direct and proximate result of Defendant's actions, Plaintiff has suffered actual damages in an amount to be proven at trial.

75. The harm caused to Plaintiff is irreparable, entitling her to equitable relief requesting the Court order Defendant to cease display or disclosure of the visual depictions.

## Count II
### *Intentional Infliction of Emotional Distress*

76. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

77. In Massachusetts, the elements for intentional infliction of emotional distress are (1) the defendant meant to cause distress or should have known it would happen, (2) their behavior was "extreme and outrageous" and unacceptable in society, (3) their actions directly caused the distress, and (4) the distress was so severe that no reasonable person could handle it. *Payton v. Abbott Labs*, 386 Mass. 540 (1982).

78. Defendant intended to inflict emotional distress upon Plaintiff when he disseminated intimate photographs and video of her without her consent.

79. Defendant intended to inflict emotional distress upon Plaintiff when he secretly recorded Plaintiff during sex and posted the video without her consent.

80. Defendant knew or should have known that emotional distress was the likely result of his conduct, shown by inter alia, by his testimony to the Lawrence District Court that posting the images was "absolutely a lapse in my judgment."
Exhibit A – Transcript p. 14.

81. Defendant's conduct in disseminating Plaintiff's photos online was extreme and outrageous, and shocking to the conscience.

82. Plaintiff suffered serious and substantial emotional distress, including loss of appetite and loss of sleep, anxiety, and depression.

83. The emotional distress suffered by Plaintiff was and is severe and pervasive and could have permanent consequences for her health.

84. As a direct and proximate result of Defendant's actions, Plaintiff has suffered actual damages in an amount to be proven at trial.

85. The harm caused to Plaintiff is knowing, willful, and irreparable, entitling her to equitable relief ordering Defendant to cease display or disclosure of the visual depictions.

## Count III
### Invasion of Privacy

86. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

87. In Massachusetts, "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity

to enforce such right and in connection therewith to award damages." M.G.L. c. 214 § 1B.

88. "To sustain a claim for invasion of privacy, the invasion must be both unreasonable and substantial or serious." *Nelson v. Salem State College*, 446 Mass, 525, 536 (2006).

89. "In determining whether a defendant committed an unreasonable intrusion, [the Court] balance[s] the extent to which the defendant violated the plaintiff's privacy interests against any legitimate purpose the defendant may have had for the intrusion." *Polay v. McMahon*, 468 Mass. 379, 383 (2014).

90. Here, Defendant committed an unreasonable intrusion when he filmed Plaintiff having intercourse without her consent and then uploaded it to the internet, where it could be accessed globally.

91. Defendant had no legitimate purpose for intruding on Plaintiff's privacy.

92. As a direct and proximate result of Defendant's actions, Plaintiff has suffered actual damages in an amount to be proven at trial.

93. The harm caused to Plaintiff is knowing, willful, and irreparable, entitling her to equitable relief ordering Defendant to cease display or disclosure of the visual depictions.

## **RELIEF REQUESTED**

WHEREFORE, in light of the foregoing, Plaintiff Jane Doe requests relief from this Court as follows:

    A. Injunctive relief commanding Defendant to permanently take down all intimate photographs and videos of her, including but not limited to any and all

    photographs and videos of her created by artificial intelligence, that he has published on the internet and elsewhere;

B. Injunctive relief instructing Defendant to cease publishing intimate photos and videos of her, including but not limited to any and all photographs and videos of her created by artificial intelligence, at any point in the future;

C. An award of statutory damages of $150,000 against Defendant for each and every photo and video containing an intimate depiction of the Plaintiff;

D. An award of actual and compensatory damages;

E. An award of attorneys' fees and costs against Defendant;

F. A specific finding that Defendant's actions were willful and malicious; and,

G. All other relief to which the plaintiff is entitled.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Jane Doe demands a trial by jury of all issues presented in this complaint, which are each triable by jury.

    Respectfully submitted,

Date: October 6, 2025

/s/ Mary E. Lemay
Mary Lemay BBO # 711345
Butters Brazilian LLP
420 Boylston Street, 4th Floor
Telephone: (617) 367-2600
Fax: (617) 367-1363
Email: lemay@buttersbrazilian.com

/s/ Elizabeth K. Keeley
Elizabeth K. Keeley, BBO # 669311
Butters Brazilian LLP
420 Boylston Street, 4th Floor
Boston, MA 02116
(o) 617-367-2600
Keeley@buttersbrazilian.com

13

**VERIFICATION OF COMPLAINT**

I, ▮▮▮▮▮▮▮▮▮▮, am the Plaintiff in the above-captioned matter. I have reviewed the foregoing allegations in this Verified Complaint, and I hereby declare under the penalty of perjury that the foregoing allegations are true and correct to the best of my knowledge and understanding.

Dated: 10/06/2025 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

# 100625 Complaint

Final Audit Report　　　　　　　　　　　　　　　　　　　　　　　　2025-10-07

| | |
|---|---|
| Created: | 2025-10-06 |
| By: | Mary Lemay (lemay@buttersbrazilian.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAG6P89NftxVTk5w037rgKlFsl9JbMKJIU |

## "100625 Complaint" History

- Document created by Mary Lemay (lemay@buttersbrazilian.com)
  2025-10-06 - 8:49:29 PM GMT

- Document emailed to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ for signature
  2025-10-06 - 8:49:33 PM GMT

- Email viewed by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
  2025-10-07 - 1:16:11 AM GMT

- Document e-signed by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
  Signature Date: 2025-10-07 - 1:17:52 AM GMT - Time Source: server

- Agreement completed.
  2025-10-07 - 1:17:52 AM GMT

Adobe Acrobat Sign